IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

**-FILED-**
**MAR 15 2017**
At _____ M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNDER SEAL, | ) |
| | ) FILED UNDER SEAL |
| Plaintiffs, | ) |
| | ) |
| vs. | ) 3:17cv216 |
| | ) |
| UNDER SEAL, | ) |
| | ) JURY TRIAL DEMANDED |
| Defendant. | ) |

**COMPLAINT FILED PURSUANT TO THE
FALSE CLAIMS ACT, 31 U.S.C. § 3729, et seq., AND THE
INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT,
I.C. § 5-11-5.5, et seq.**

**FILED UNDER SEAL**
As required by 31 U.S.C. § 3730(b)(2) & I.C. § 5-11-5.5-4(c)

IN THE UNITED STATES DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* MELISSA M. GLASER and DESTINY R. CAMPBELL, and STATE OF INDIANA *ex rel.* MELISSA M. GLASER and DESTINY R. CAMPBELL,<br><br>Plaintiffs,<br><br>vs.<br><br>SOUTH BEND COMMUNITY SCHOOL CORPORATION,<br><br>Defendant. | Cause No.: 3:17-cv-216<br><br><br>FILED IN CAMERA AND UNDER SEAL<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT PURSUANT TO THE FEDERAL FALSE CLAIMS ACT AND THE INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT**

COMES NOW the United States of America (the "United States") and the State of Indiana, by and through *qui tam* Plaintiffs, Melissa Glaser and Destiny Campbell (collectively "Relators"), and bring this cause of action under 31 U.S.C. §§ 3729-3733 (the "False Claims Act") and Ind. Code § 5-11-5.5 (collectively the "False Claims Acts") to recover from the South Bend Community School Corporation all damages, penalties, and other remedies established by the False Claims Acts on behalf of the United States, the State of Indiana, and themselves. For this Complaint, Ms. Glaser and Ms. Campbell state and allege the following:

**PARTIES**

1. Ms. Melissa Glaser is an individual citizen of the United States and was at all times relevant to the counts herein a resident of St. Joseph County, State of Indiana.

2. Ms. Destiny Campbell is an individual citizen of the United States and was at all times relevant to the counts herein a resident of St. Joseph County, State of Indiana.

3. The South Bend Community School Corporation (hereinafter "the SBCSC" or "the Corporation") is a government entity and public school corporation located in South Bend, Indiana, serving the City of South Bend, Indiana and parts of St. Joseph County, Indiana.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Relators' Complaint pursuant to the jurisdictional provision of the False Claims Act, 31 U.S.C. § 3732(a), because this Complaint arises from and seeks remedies under the False Claims Act, 31 U.S.C. § 3729-3733 on behalf of the United States.

5. This Court has jurisdiction over Relators' state law claim for violation of the Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5, pursuant to the jurisdictional provision of the False Claims Act, 31 U.S.C. § 3732(b), granting district courts jurisdiction over false act claims under state law arising under the same transaction or occurrence underlying a federal False Claims Act claim.

6. Venue for this Complaint exists in the United States District Court for the Northern District of Indiana pursuant to 31 U.S.C. § 3732(a) because the SBCSC is principally located and carries on its business within the Northern District of Indiana.

## GENERAL BACKGROUND

7. The Carl D. Perkins Career and Technical Education Act of 2006, 20 U.S.C. §§ 2301-2471 ("the Perkins Act") is a principal source of federal funding to states for the improvement of secondary career and technical education programs ("CTE programs").

8. Under the Perkins Act, federal funds are allocated to the states, using a statutorily specified formula, for the purpose of developing, improving, and advancing state CTE programs ("Perkins grants.") *See* 20 U.S.C. §§ 2321-2322.

9. Federal Perkins grants are received, administered, and distributed within each state by the state's "eligible agency," which is a board established by state law for the purpose of overseeing statewide CTE programs. *See* 20 U.S.C. §§ 2302(12), 2321-2322.

10. Under Indiana law, Ind. Code § 20-19-2-19(a), the Indiana State Board of Education is the state's eligible agency and is responsible for receiving, distributing, and accounting for all funds received for CTE programs through the Perkins Act.

11. Once in receipt of Perkins grant funds, each state's eligible agency is responsible for disbursing the grant monies to "eligible recipients," which are local education agencies, including secondary and post-secondary schools, that are eligible to receive Perkins grants. *See* 20 U.S.C. § 2302(14).

12. The SBCSC is an eligible recipient of Perkins grants under 20 U.S.C. § 2302(14).

13. A state's eligible agency is responsible for preparing and submitting to the federal government a 6-year plan, known as the "state plan," which details the state's career and technical programs of studies; how such programs will be implemented; how the eligible agency will support eligible recipients; how the eligible agency will approve the distribution of funds to eligible recipients; and how the Perkins grants will be used to improve or develop CTE programs.

14. To obtain Perkins grants, the Indiana Department of Education developed the "Indiana College and Career Pathways" program to better connect secondary and post-secondary career readiness and training programs with the programs' respective career tracks.

15. The Indiana Pathways is based on "career clusters"—certain career fields that require specific trainings and experiences that can be administered at the secondary or post-secondary levels, i.e., manufacturing, hospitality and human services, health sciences, and public safety, among several others.

16. The Indiana Pathways provide for a foundational curriculum for all Pathways, but then require certain classes and specified "end of course assessments" for each individual career cluster, dependent on which career cluster a pupil pursues.

17. In Indiana, career Pathways are funded through Perkins grants.

18. Pursuant to the Perkins Act, each eligible recipient is required to submit to the state's eligible agency a "local plan," which is substantially similar to the state plan, that details: how the recipient will implement and execute its CTE programs; how it will engage students in a curriculum; how teachers, administrators, and CTE support staff will be trained to promote the integration of rigorous and coherent content aligned with challenging academic standards and relevant career and technical education; how parents, teachers, faculty, administrators, representatives of local businesses, and others are to be involved in the development, implementation, and execution of the recipient's CTE programs; and how the recipient will evaluate and continuously improve the recipient's CTE programs.

19. Perkins grants must be used by each eligible recipient in accordance with nine mandatory uses, and twenty permissive uses, detailed in the Perkins Act. All nine mandatory uses must be satisfied before Perkins grants may be used on any of the twenty permissive uses, pursuant to 20 U.S.C. § 2355.

20. Under Indiana law, Ind. Code § 20-43-8-12, career and technical education program grants are awarded to state school corporations using a formula that multiples the total number of pupils enrolled in a certain program by a statutorily-specified dollar amount that varies depending on the labor market need for the skill taught in the program and the average wage level of workers in that labor market.

21. In accordance with the Perkins Act, eligible recipients are required to assess their CTE programs' performance based upon state-established standards, and are required to report such results to the state's eligible agency.

22. The Perkins Act also requires an eligible recipient to return any unused Perkins grant monies exceeding what the eligible recipient spent on CTE programs in a given year.

## FACTUAL ALLEGATIONS

23. The SBCSC is a public school corporation serving the greater South Bend, Indiana metro area, with an annual enrollment of approximately 19,000 students; approximately 6,000 students are enrolled in the Corporation's five secondary schools (grades 9-12).

24. At all times relevant to the counts herein, the SBCSC regularly submitted "local plans" to the Indiana State Board of Education seeking assistance under the Perkins Act.

25. At all times relevant to the counts herein, the SBCSC was the recipient of Perkins grants, and was operating a number of CTE programs throughout the Corporation's secondary schools.

26. At all times relevant to the counts herein, Laura Marzotto was the SBCSC Director of Career and Technical Education and oversaw all CTE programs in the corporation.

27. Washington High School is one of the SBCSC's five secondary schools and is home to the Corporation's "Medical/Allied Health Sciences" magnet program (the "Magnet Program.")

28. The Magnet Program enrolls several hundred pupils per year and offers a curriculum geared towards the Indiana Pathways "Health Science" career cluster; the Magnet Program is a CTE Program for purposes of receiving Perkins grants.

29. A pupil enrolled in the Magnet Program and seeking to complete the Health Science career cluster and graduate between 2010 and 2013 was required to sit for and successfully pass

the National Consortium for Health Science Education (NCHSE) exam as part of the Pathways "end of course" assessment.

30. The Magnet Program, along with other CTE programs offered by the SBCSC since 2006, have regularly underperformed state-mandated performance levels in technical skill attainment.

31. Ms. Glaser was hired as an instructor the Magnet Program in 2007, and Ms. Campbell was hired as an instructor in the Magnet Program 2008; both Relators are registered nurses.

32. In 2013, Relators accepted positions as co-coordinators of Washington High School's Magnet Program.

33. During their employment as instructors and co-coordinators, Relators were integrally involved in the administration and development of the Magnet Program, to include developing methods to grow the program and recruit and retain students, and were regularly involved with completing federal, state, and Corporation Perkins grant reporting requirements.

34. During their employment as co-coordinators, Relators were never provided with a budget with which to purchase goods, services, or other essentials to further implement and develop the Magnet Program, despite the Corporation annually receiving Perkins grants usually in excess of $450,000.00.

35. After Relators began inquiring with Washington High School and Corporation administrators regarding the availability of Perkins grant monies, Relators were systematically excluded from meetings with school and Corporation administrators regarding the direction of the Magnet Program.

36. At the end of the 2014 school year—Relators' first year as co-coordinators—Relators were replaced as co-coordinators by Ms. Karla Black.

37. Relators were subsequently and abruptly transferred from Washington High School to other schools in the Corporation, and were made to teach subjects for which they were not licensed and did not have experience; Relators eventually resigned from the Corporation in 2015.

38. Relators, through their experience as instructors and co-coordinators in the Magnet Program, have specific and personal knowledge of SBCSC CTE program activities and funding during the times which were employed by the SBCSC (2007-2015).

39. Relators are an "Original Source" as it is defined in the False Claims Act, as they have not publically disclosed the information pertaining to this Complaint in a federal hearing or agency investigation, or to the news media.

## SUMMARY OF VIOLATIONS AND FRAUD

### Fraudulent Reporting of Pupil Counts and Assessment Standards

40. Relators, as instructors and co-coordinators in the Magnet Program, were required by state law to count all pupils enrolled in the Magnet Program for purposes of determining Perkins grant allocations to the SBCSC.

41. Relators were aware that some pupils were inexplicably counted two or more times on rosters and in reports that were, upon information and belief, submitted to the Indiana State Board of Education for purposes of increasing the number of pupils enrolled in the Magnet Program to ultimately increase the amount of federal Perkins grants allocated to the SBCSC.

42. In addition, the Indiana State Board of Education requires school corporations to administer and report pupils' scores on certain examinations/assessments to evaluate the effectiveness of a corporation's CTE programs.

43. For health science career clusters, the NCHSE exam was the single required "end of course" assessment until the 2013-2014 school year.

44. Until 2013 and during Relators' tenure at Washington High School, Relators were instructed by their supervisors and/or other Corporation employees not to administer the NCHSE.

45. For several years the SBCSC failed to administer an "end of course" assessment required by the Indiana State Board of Education.

46. Upon Relators' experience and belief, the SBCSC failed to disclose to the Indiana State Board of Education that the NCHSE exam was not administered.

47. Upon Relators' experience and belief, fraudulently prepared student enrollment numbers, rosters, or reports, and fraudulent assurances that state "end of course" assessment standards were being met, were submitted in each annual "local plan" or reporting submission to the Indiana State Board of Education each year from 2007 through at least 2014.

48. Upon information and belief, numerous school and Corporation administrators were aware of and complicit in the SBCSC's intentional and knowing failure to properly administer Perkins grant funds.

49. The State of Indiana and the United States relied to their detriment on the veracity of the SBCSC's annual local plan and any supplemental submissions to the Indiana State Board of Education, and continued to award Perkins funds to the SBCSC.

### Failure to Establish Proper Budgets

50. As acting co-coordinators of the Magnet Program, Relators were obliged to further the objectives of the Perkins Act by developing, implementing, and enhancing the Magnet Program.

51. Despite their obligations, Relators were regularly informed by their supervisors in the Corporation, including Principal Sanders, Director Marzotto, and the Director of High Schools and Magnet Programs, Dr. Cynthia Oudghiri, that no budget existed for the Magnet Program.

52. Relators' supervisors, including Directors Marzotto and Ougdhiri, cancelled numerous meetings with Relators and other Corporation administrators regarding Relators' inquiry into SBCSC Perkins grants usage, and acted to prevent Relators from discussing their un-funded CTE program with the Corporation's superintendent.

53. Relators were told their Magnet Program was without a budget, despite numerous pupils being enrolled in the program and qualifying for Perkins grants as distributed by the Indiana State Board of Education to the Corporation in accordance with state statute.

54. The lack of a budget caused Relators to instruct their students to organize extracurricular fundraisers in order to pay for necessary program-related uniforms, such as nursing scrubs; other program-related essentials, such as identification cards for students required for entrance into local hospital-based clinical programs; and student fees for school-required membership in the Health Occupation Student Association, a national student organization.

55. As co-coordinators of the Magnet Program, Relators were made aware that some of the funding for their program was re-allocated to or from Washington High School or the Corporation's budget for science programming, meaning the Perkins grants to the SBCSC had been inappropriately allocated for purposes other than those expressly allowed by the Perkins Act.

56. Relators, upon information and belief, were made aware that at least two other secondary schools in the SBCSC also operated CTE programs without budgets.

57. The SBCSC failed to properly account for the expenditures of all federal Perkins grant monies, despite submitting general budgets in the Corporation's "local plans," and by re-

allocating federal Perkins grant monies into different Corporation programs, the SBCSC used a false record to continue receiving Perkins grant monies.

58. Upon Relators' experience and belief, fraudulent budget reports were submitted in each annual "local plan" or reporting submission to the Indiana State Board of Education each year from 2007 through at least 2014.

59. Upon information and belief, numerous school and Corporation administrators were aware of and complicit in the SBCSC's intentional and knowing failure to properly administer Perkins grant funds.

60. The State of Indiana and the United States relied to their detriment on the veracity of the SBCSC's annual local plan and any supplemental submissions to the Indiana State Board of Education, and continued to award Perkins funds to the SBCSC.

### Failure to Return Unspent Perkins Grants

61. Upon information and belief, the SBCSC regularly and routinely failed to remit unspent federal Perkins grant monies to the Indiana State Board of Education, as required by 20 U.S.C. § 2353.

62. The failure to remit the remaining portions of the Corporation's Perkins grants to the Indiana State Board of Education was a fraud upon the United States and the State of Indiana.

63. The SBCSC has fraudulently failed to remit Perkins funds each year from 2007 through at least 2014.

64. Upon information and belief, numerous school and Corporation administrators were aware of and complicit in the SBCSC's intentional and knowing failure to properly administer Perkins grant funds.

### CAUSES OF ACTION

**Count I – Violation of the False Claims Act, 31 U.S.C. § 3729, et seq.**

65. Relators re-allege and incorporate herein each and every allegation contained in the preceding paragraphs numbered 1 through 64 of this Complaint.

66. The SBCSC, while seeking monetary assistance under the federal Perkins Act, knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

67. The SBCSC, while seeking monetary assistance under the federal Perkins Act, knowingly made, used, or caused to be made or used, false records or material statements to fraudulently obtain payments from the government in violation of 31 U.S.C. § 3729(a)(1)(B).

68. Several employees of the SBCSC, while seeking monetary assistance under the federal Perkins Act, conspired to defraud the federal government by submitting false or fraudulent records or material statements to obtain payments from the government under 31 U.S.C. § 3729(a)(1)(C).

69. The United States, unaware of the falsity of the SBCSC's claims, records, and/or statements and in reliance of the accuracy thereof, permitted assistance to the SBCSC for its false and fraudulent statements.

70. Due to SBCSC's fraudulent conduct, the express purpose of the Perkins Act was frustrated and federal monies allocated by the United States were used for impermissible purposes during the 2006-2007 school year through at least the 2014-2015 school year, in violation of the False Claims Act.

71. As a result of the SBCSC's conduct, the United States government has suffered substantial monetary damages, estimated to exceed $4.67 million for grants provided to the

SBCSC from 2006 to 2015, as a result of the SBCSC's fraudulent reporting to obtain said grant money.

### Count II – Violation of the Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5

72. Relators re-allege and incorporate herein each and every allegation contained in the preceding paragraphs numbered 1 through 71 of this Complaint.

73. The SBCSC, while seeking monetary assistance under the Perkins Act, knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval to the State of Indiana in violation of Ind. Code § 5-11-5.5-2(b)(1).

74. The SBCSC, while seeking monetary assistance under the Perkins Act, knowingly made, used, or caused to be made or used, false records or material statements to fraudulently obtain payments from the State of Indiana in violation of Ind. Code § 5-11-5.5-2(b)(2).

75. Several employees of the SBCSC, while seeking monetary assistance under the Perkins Act, conspired to defraud the State of Indiana by submitting false or fraudulent records or material statements to obtain payments from the State of Indiana in violation of Ind. Code § 5-11-5.5-2(b)(7).

76. The State of Indiana, unaware of the falsity of the SBCSC's claims, records, and/or statements and in reliance of the accuracy thereof, permitted assistance to the SBCSC for its false and fraudulent statements.

77. Due to the SBCSC's fraudulent conduct, the express purpose of the Perkins Act was frustrated and monies allocated by the State of Indiana through the Indiana State Board of Education were used for impermissible purposes during the 2006-2007 school year through at least the 2014-2015 school year, in violation of the Indiana False Claims and Whistleblower Protection Act.

78.     As a result of the SBCSC's conduct, the State of Indiana has suffered substantial monetary damages, estimated to exceed $4.67 million from 2006 to 2015, as a result of the SBCSC's fraudulent reporting to obtain grant money.

## REQUESTED RELIEF

79.     On behalf of the United States and the State of Indiana, Relators seek to recover monetary damages from the SBCSC equal to three times the actual damages the United States and the State of Indiana have suffered as a result of the SBCSC's false claims, as provided by 31 U.S.C. § 3729(a)(1) and Ind. Code § 5-11-5.5-2(b).

80.     In addition, Relators seek to recover all civil penalties against the SBCSC on behalf of the United States and the State of Indiana in accordance with 31 U.S.C. § 3729(a)(1) and Ind. Code § 5-11-5.5-2(b).

81.     For their contribution to the government's investigation and recovery of damages from the SBCSC, Relators should be awarded a fair and reasonable amount pursuant to 31 U.S.C. § 3730(d), and, in addition, their attorneys are entitled to a fee from the Common Fund ("Settlement") created by filing this cause of action to the extent this case benefits any non-parties.

82.     Relators seek to be awarded all costs and expenses for this action, including statutory attorneys' fees and court costs, as provided by 31 U.S.C. § 3730(d).

83.     The SBCSC is also liable for pre-judgment interests at the highest rate allowable by law, and post-judgment interest on any judgment against the SBCSC in this action.

## PRAYER FOR RELIEF

WHEREFORE, Relators Melissa Glaser and Destiny Campbell respectfully request this Honorable Court enter judgment on behalf of Relators and against the South Bend Community School Corporation for the following:

a. Damages in an amount equal to three times the actual damages the United States and the State of Indiana have suffered as a result of the SBCSC's fraudulent claims and violations of the federal and state False Claims Acts;

b. Civil penalties against the SBCSC as provided for in the False Claims Acts;

c. An award of attorneys' fees to Relators' attorneys from the Common Fund ("Settlement"), if any, created for the benefit of non-parties;

d. All costs and expenses of this litigation, including statutory attorneys' fees and costs, Relators incur in this litigation;

e. Pre-judgment and post-judgment interests at the highest rate allowed by law; and

f. All other relief on behalf of Relators, the United States, or the State of Indiana to which each may justly be entitled, and which this Honorable Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relators hereby demand a trial by jury in this action on all issues so triable.

Respectfully submitted,

_/s/ Clint A. Zalas_

Clint A. Zalas, 23202-46
Lee, Groves and Zalas
205 W. Jefferson Blvd., Ste. 502
South Bend, IN 46601
Telephone: (574) 232-5923
Facsimile: (574) 232-5942
cazalas@lgzlegal.com
*Attorney for Relators*